UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------
UNITED STATES OF AMERICA,

       -against-

DANIEL HERNANDEZ,

       Defendant.
------------------------------------------------

MEMORANDUM & ORDER

00-CR-1078 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Daniel Hernandez moves, *pro se*, for an order correcting a clerical error in the written judgment pursuant to Federal Rules of Criminal Procedure Rule 36 ("Rule 36"), arguing that the written judgment in his case reflected a higher criminal history category than what was orally pronounced at his sentencing hearing. (*See* Mot. to Correct Clerical Error ("Motion") (Dkt. 407).) The Government opposes the motion, arguing that there is ambiguity as to whether Judge Reena Raggi, who presided over Mr. Hernandez's trial and sentencing, made a formal determination on the record regarding Mr. Hernandez's criminal history category. (*See* Gov't Response in Opp. ("Response") (Dkt. 408).) For the following reasons, Mr. Hernandez's motion is GRANTED.

### I.   BACKGROUND

Mr. Hernandez, one of several defendants in the 2000 indictment *United States v. Wagner* et al., No. 00-CR-1078 (E.D.N.Y.), was charged with various crimes committed in his capacity as a member of the "Woodbine Crew," a heroin trafficking and robbery enterprise based in Bushwick. (*See* October 19, 2000 Indictment (Dkt. 1).) On July 12, 2001, a jury convicted Mr. Hernandez of racketeering in violation of 18 U.S.C. § 1962(c), racketeering conspiracy in violation of 18 U.S.C. § 1962(d), conspiracy to distribute heroin in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and both conspiracy to commit and commission of a Hobbs Act

1

robbery in violation of 18 U.S.C. § 1951. (Jury Verdict (Dkt. 165).) On May 10, 2002, Judge Raggi sentenced Mr. Hernandez to life imprisonment. (Original Judgment (Dkt. 234).)

On appeal, the Second Circuit affirmed Mr. Hernandez's underlying convictions but remanded the case for resentencing following the decisions in *United States v. Crosby*, 397 F.3d 103 (2d. Cir. 2005) and *United States v. Booker*, 543 U.S. 220 (2005). (Aug. 11, 2005 Mandate (Dkt. 276).) On remand, Judge Raggi again imposed a sentence of lifetime imprisonment. (Feb. 14, 2006 Judgment (Dkt. 307).) Mr. Hernandez appealed the resentencing judgment on several grounds, all of which were denied by the Second Circuit, which affirmed the district court in full. (Mar. 22, 2007 Mandate (Dkt. 341).)[1]

Mr. Hernandez now claims that there is a clerical error in his written judgment regarding his criminal history category. (Mot. at ECF 1-2.) He asserts that at his sentencing hearing, Judge Raggi stated that his criminal history was a category 1, but the written judgment reflects a criminal history category of 3. (*Id.*)

---

[1] Despite the unsuccessful appeals and lengthy amount of time that has passed since Mr. Hernandez's sentencing, he is not barred from bringing the instant motion. There is no statute of limitations for filing a Rule 36 motion. In *United States v. Jennings*, a convicted drug dealer brought a Rule 36 motion to correct a clerical error from his sentencing judgment 14 years after he was convicted and sentenced. 563 Fed. App'x. 53, 54 (2d Cir. April 21, 2014) (summary order). The Second Circuit noted that "Jennings failed in all of his postconviction initiatives: a direct appeal; a motion under 28 U.S.C. § 2255; five motions for reduction of sentence under 18 U.S.C. § 3582(c); and motions for reconsideration and clarification and two appeals." *Id.* Nonetheless, the court granted Jennings' meritorious Rule 36 motion, recognizing that under Rule 36, a district judge "may *at any time* correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Fed. R. Crim. P. 36 (emphasis added).

Mr. Hernandez moves to have the court correct this error pursuant to the authority granted under Federal Rules of Criminal Procedure Rule 36. (*Id.*)

During the sentencing proceeding, Judge Raggi stated: "The guidelines remain calculated as they were at the time of the original sentence, which I believe was an offense level of 40[2] and *criminal history category of 1* for Mr. Hernandez." (Resent. Tr. at 20) (emphasis added.) Mr. Hernandez's defense attorney, Mr. Katowitz, then asked for clarification regarding the criminal history category and offense level, to which the prosecutor, Ms. Dugger, responded "43 and 1." (*Id.*) Neither party objected further; nor did Judge Raggi. (*Id.*) The criminal history category was not referenced again until the end of the sentencing proceeding. At that time, Judge Raggi explained to the Defendant that the guidelines provided for a life sentence even "after giving you the benefit of the doubt that you should have no criminal history attributed to you." (Resent. Tr. at 33.)

In opposition, the Government argues that there is ambiguity as to whether Judge Raggi made a formal determination on the record that Hernandez's criminal history category was 1, relying on Judge Raggi's statement that, at the original sentencing, she "gave the defendant the benefit of [the] doubt with respect to criminal history" but "didn't make a formal ruling" because the matter was "raised only on the day of the sentence." (Gov't Opp. (Dkt. 408) at 2; Resent. Tr. at 19). The Government argues that "[t]his lack of clarity demonstrates that the defendant's motion is not 'proven beyond a reasonable doubt' and that it should be denied." (Gov't Opp. at 3.)

II. **DISCUSSION**

---

[2] Judge Raggi later corrected the offense level to the correct level of 43, on the record. (June 27, 2006 Resent. Tr. ("Transcript") (Dkt. 326) at 20.)

3

To determine whether to grant the requested relief, this court must first engage in a threshold inquiry as to whether Rule 36 is the appropriate vehicle for the relief requested. Finding that it is, the court will then assess, under the instant facts, what corrections should be made pursuant to Rule 36.

### A. Rule 36 Can Provide the Requested Relief

Rule 36 is the appropriate vehicle for relief because the putative error appears on the face of the record, correcting the putative error would not change the internal structure of the sentence, and the court has not been able to identify any collateral consequences of the putative error for which relief beyond that offered by Rule 36 would be required.

#### 1. Legal Framework

Rule 36 states: "After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Fed. R. Crim. P. 36. Rule 36 can be used to "amend the written judgment so that it conforms with the oral sentence pronounced by the court" but is intended to be used for "only minor, uncontroversial errors." *United States v. Werber*, 51 F.3d 342, 347 (2d Cir. 1995). A clerical error that can be corrected by Rule 36 authority "should appear on the face of the record, leaving little need for adversary proceedings to clarify the issue." *Id.* The rule "does not authorize the court ... to modify the written judgment to effectuate an intention that the court did not express in its oral sentence." *United States v. DeMartino*, 112 F.3d 75, 79 (2d Cir. 1997). Corrections that go so far as to "change the internal structure of the sentence" are not permitted under Rule 36. *See United States v. Burd*, 86 F.3d 285, 288 (2d Cir. 1996).

In *Burd*, the written judgment could not be amended to match the oral sentence under Rule 36 because such an amendment

would have constituted a change to the internal structure of the sentence. *Id.* At sentencing, the district court had wrongly imposed a 78-month sentence running concurrently on 12 counts, in violation of the statutory maximum sentence of 60 months. *Id.* at 287. The district court then amended the judgment pursuant to Rule 36 so that the sentence was split in two, one sentence of 60 months for 6 counts running consecutively with another sentence of 18 months for the other 6 counts, in an apparent attempt to circumvent the statutory maximum penalty. *Id.* The Second Circuit reversed the district court's amendment because it was beyond the purview of Rule 36, reasoning that the correction "did more than correct a clerical error...[it] required more than substituting a right number for a wrong number," and ultimately changed the underlying structure of the sentence. *Id.* at 288.

In contrast, in *United States v. Ramirez*, the Second Circuit instructed the district court to correct a written judgment that, as drafted, would have imposed a two-year term of supervised release so that it conformed with the court's oral pronouncement of a three-year term of supervised release. 344 F.3d 247, 255 (2d. Cir. 2003). Similarly, in *United States v. A-Abras Inc.*, the Second Circuit remanded for amendment of a judgment pursuant to Rule 36 because the oral sentence had pronounced different conditions of supervised release than those that were eventually written into the judgment. 185 F.3d 26, 29 (2d. Cir. 1999). Unlike *Burd*, *Ramirez* and *A-Abras* provide examples of the types of unambiguous and purely clerical errors capable of correction under Rule 36 in the event of a discrepancy between the oral and written judgments.

2. <u>Analysis</u>

   a. The putative error is unambiguous.

During the resentencing proceeding, Judge Raggi was definitive in her intention to apply a criminal history category of 1 to Mr. Hernandez, stating "the guidelines remain calculated as they

5

were at the time of the original sentence, which I believe was an offense level of 40[3] and *criminal history category of 1* for Mr. Hernandez." (Resent. Tr. at 20) (emphasis added.) In opposition, the Government argues that Judge Raggi's intention was ambiguous, relying on her statement that "at the original sentence, I gave the defendant the benefit of [the] doubt with respect to criminal history . . . I didn't make a formal ruling." (Resent. Tr. at 19.) That statement, however, clearly referred to the *original sentencing proceeding*, not the resentencing proceeding that is the focus of Mr. Hernandez's Rule 36 motion. While recognizing that she had not made a formal ruling at the original sentencing, Judge Raggi was more conclusive at the resentencing hearing. At the initial sentencing, the issue of Mr. Hernandez's criminal history category had arisen only on the day of sentencing. (*See* May 21, 2002 Original Sent. Tr. (Dkt. 237) at 58-67.) At that proceeding, Judge Raggi opted not to make a formal judgment on the issue in light of the fact that the parties had not been given time to respond.[4] (*Id.* at 67.) By the time resentencing took place, however, the parties had been given ample time to share with the court any factual support they might have had for a higher criminal history category and had not done so. Judge Raggi thus stated that

---

[3] Judge Raggi later corrected the offense level to the correct level of 43, on the record. (Resent. Tr at 20.)

[4] In Mr. Hernandez's pre-sentencing investigation report, prepared prior to his original sentencing, the Bureau of Prisons recommended a criminal history category 3 be applied to Mr. Hernandez based on prior convictions. (Nov. 2, 2001 PSR (Dkt. 409) at 39.) At the original sentencing hearing, Mr. Hernandez objected to the report's recommendation, arguing that he was discharged from parole for one of the prior convictions more than five years before the instant offenses occurred and therefore that conviction should not be considered in the calculation of his criminal history level. (Original Sent. Tr. at 58.) Judge Raggi assumed Mr. Hernandez's argument on this issue was correct but chose not to make a formal ruling given that the Government lacked proper time to respond and that because the total offense level was 43, the difference in criminal history category would not impact the sentence. (*Id.* at 67.)

6

"[n]ot having received anything, I don't think from the government to the contrary, I [apply a criminal history category of 1] again today." (Resent. Tr. at 19.) In other words, she chose to apply the same criminal history category when given a second opportunity to address the issue at resentencing *after the Government had sufficient time to object*, and made clear at that time that her formal intention was to apply a criminal history category of 1 to Mr. Hernandez.

This intention became even more clear as the resentencing hearing continued. The prosecutor asserted that "[he] believe[d] the criminal history was a level 3," but Judge Raggi dismissed this objection immediately. (Resent. Tr. at 20.) When Judge Raggi subsequently asked for confirmation from the parties on her calculations, the prosecutor responded, "43 and 1," to which no further objection was raised. (*Id.*) A criminal history level of 3 was not mentioned again at any point in the sentencing. (Resent. Tr., *passim*.) The transcript plainly reveals that Judge Raggi applied a criminal history category of 1 at the hearing, and thus creates a discrepancy between the oral pronouncement and the written judgment, which reflects a criminal history category of 3. This error is unambiguous, "appear[s] on the face of the record," and "leav[es] little need for adversary proceedings to clarify the issue." *Werber*, 51 F.3d at 347.

    b. Correcting the putative error does not change the structure of the sentence.

Correcting the written judgment to reflect a criminal history category of 1 would not change the internal structure of the sentence, since the guideline range calculation recommends a life sentence regardless of whether the criminal history category is 1 or 3, and Judge Raggi made clear on the record her intention to

impose a life sentence.[5] Thus, the error in need of correction falls within the court's jurisdiction under Rule 36.

          c. No relief beyond what Rule 36 offers is required.

Mr. Hernandez claims that he has been subjected "to many adverse collateral consequences during his time in prison" as result of the clerical error. (Mot. at ECF 2.) If he had suffered such consequences, Rule 36 would likely not be able to offer sufficient relief for his injuries. In support of his argument, Hernandez cites Exhibit 2 to his Motion, the Male Custody Classification Form filed by the Bureau of Prisons when he was designated. (Ex. 2, Mot. at ECF 6.) Custody classification is "a procedure whereby an inmate is assigned a level of supervision according to their criminal history and institutional behavior/adjustment." Fed. Bureau of Prisons, Program Statement 5100.08, Inmate Security Designation and Custody Classification (updated 2019), https://www.bop.gov/policy/progstat/5100_008cn.pdf ("Custody Classification Form") ch. 6 at 1. The Custody Classification Form operates as a point system, considering the severity of the convictions and the inmate's criminal history score, among other factors, consistent with the statutory authority contained in 18 U.S.C. § 3621(b); *Id.* ch. 4 at 2-16. Points are added up to reach a Security Point Total, which is then used, along with a series of Public Safety Factors (*See id.* ch. 5), to determine whether the inmate will be designated to a low, medium, or high security prison. *Id.* ch. 6 at 16. A critical component of the calculation of the Security Point Total is the inmate's Criminal History Score, which is "derived from the US Sentencing Guidelines Criminal History Points, as reflected in the final judgment." *Id.* ch. 4 at 8.

---

[5] The Sentencing Table provides a recommendation of life in prison for any conviction with an offense level of 43, regardless of the person's criminal history category. *See* U.S.S.G. Ch. 5, Pt. A.

8

Mr. Hernandez's Custody Classification Form reflects that he was designated to a high security level prison.[6] (Ex. 2, to Mot. at ECF 6.) Although Mr. Hernandez does not make explicit the nature of the alleged "adverse consequences," he may be asserting that he was incorrectly designated to a high security prison because of the incorrect criminal history category in the written judgment. Mr. Hernandez is correct that the BOP appears to have added four points to his Security Point Total based on the erroneous judgment. (*Id.*) However, these four points were not ultimately determinative of his custody classification. The BOP also considers various "Public Safety Factors" to determine an inmate's required security level, including the inmate's sentence length. *See generally Id.* ch. 5. Mr. Hernandez's high security level was pre-determined by the fact that he received a life sentence. Table 5-2 of the BOP's policy indicates that if an inmate has over 30 years remaining on his sentence, he requires a high security level regardless of his Security Point Total. *Id.* ch. 5 at 12. Mr. Hernandez is serving a life sentence and would therefore have been designated to a high security facility no matter his Security Point Total. Thus, Mr. Hernandez's designation to a high security prison was not a result of the clerical error in his sentencing judgment.

In short, correcting the written judgment to reflect the orally pronounced criminal history category of 1 does not result in any sentence reduction or release. It is unlikely that any form of relief beyond clerical correction of the written judgment to accurately reflect the oral pronouncement is available to Mr. Hernandez at this time.

---

[6] As of July 2023, Hernandez was incarcerated at United States Penitentiary Canaan, a high security prison. *See Inmate Locator*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed July 19, 2023).

### B. Rule 36 Should Be Applied to Reflect that the Oral Pronouncement Controls Over a Subsequent Written Judgment

The court must defer to Judge Raggi's oral statement at Mr. Hernandez's 2006 sentencing rather than to the subsequent written judgment. When an oral pronouncement of a sentence differs from a subsequent written judgment, the oral pronouncement controls. *See United States v. Rosario*, 386 F.3d 166, 168 (2d Cir. 2004) ("It is well settled, as a general proposition, that in the event of variation between an oral pronouncement of sentence and a subsequent written judgment, the oral pronouncement controls"); *United States v. Handakas*, 329 F.3d 115, 117 (2d Cir. 2003). This rule is derived from Federal Rules of Criminal Procedure Rule 43 ("Rule 43"), which sets forth the right of a criminal defendant to be present at his or her sentencing, Fed. R. Crim. P. 43(a)(3), as well as from the United States Constitution. Since the defendant is present at the hearing when the sentence is orally imposed but not when the judgment is later written and entered, any changes to the sentence reflected in the written judgment that were not expressed orally at the hearing would violate the defendant's Rule 43 and constitutional rights. *Handakas*, 323 F.3d at 117; *A-Abras*, 185 F.3d at 29 ("where an unambiguous oral sentence conflicts with the written judgment, the constitutional right of a defendant to be present at sentencing dictates that the oral pronouncement of sentence must control"). In other words, "the oral sentence [] constitutes the judgment of the court, and [] is authority for the execution of the court's sentence. The written commitment is mere evidence of such authority." *United States v. Marquez*, 506 F.2d 620, 622 (2d Cir. 1974).[7]

---

[7] The wording of Federal Rule of Criminal Procedure Rule 35 provides additional evidence to support this court's understanding of the oral

10

In sum, the oral pronouncement that Mr. Hernandez had a criminal history level of 1 controls over the subsequent written judgment noting a criminal history level of 3. Rule 36 must thus be used to correct the written judgment such that it matches the oral pronouncement made at Mr. Hernandez's sentencing. To hold otherwise would violate Mr. Hernandez's right under Rule 43 to be present at the time of sentencing.

### III.   CONCLUSION

For the foregoing reasons, Mr. Hernandez's motion is GRANTED. The court will issue an amended written judgment accordingly. Mr. Hernandez's existing sentence will remain in place.

SO ORDERED.

Dated:   Brooklyn, New York
         July 27, 2023

                                          s/Nicholas G. Garaufis
                                          ―――――――――――――――――
                                          NICHOLAS G. GARAUFIS
                                          United States District Judge

---

pronouncement as the controlling sentence. Rule 35 allows the court to "correct a sentence that resulted from arithmetical, technical, or other clear error" within 14 days after sentencing. Fed. R. Crim. P. 35(a). While not available to Hernandez because of the timeliness requirement, Rule 35 specifically defines "sentence" as "the oral announcement of the sentence." Fed. R. Crim. P. 35(c).